[No. AO19180. First Dist., Div. One. Nov. 3, 1983.]

WILBUR M. TAYLOR, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD
and DEPARTMENT OF FORESTRY, Respondents.

COUNSEL

Phillip N. Bruce for Petitioner.

Richard W. Younkin, William B. Donohoe, Alvin R. Barrett, Richard A. Krimen, Michael J. Brodie, Arthur Hershenson, Fernando Da Silva and Robert A. La Porta for Respondents.

OPINION

RACANELLI, P. J.—■    The single issue in this case is whether the Workers' Compensation Appeals Board (hereafter Board) properly refused to grant the claimant Wilbur Taylor (hereafter Taylor) the benefit of a stat-

utory presumption of industrial cause of his heart disease.[1] We conclude that the Board erred, and we annul its decision.

## I

Taylor worked from 1962 until 1980 as a heavy fire equipment operator for the State Department of Forestry. Generally, his job involved operation and some maintenance of bulldozers, for the purposes of fire control and forest protection and conservation. Taylor testified that the job engaged him primarily in "pioneering and building roads and maintenance of roads, . . ." The roads were used both as logging and fire roads.

During his 18 years' service Taylor was called to work at fire sites about 12 times and was called upon to deliver equipment to fire sites on 6 or 8 other occasions. His work at the fire sites consisted of using the bulldozer to cut fire lines, i.e., to remove vegetation along a wide line around the fire, such that the fire could not cross it. On these occasions Taylor worked "[a]round the clock" or "[u]ntil relieved." He was exposed to smoke at all of the fire sites.

Our review of this case does not turn on the medical evidence. It appears that all of the relevant physicians diagnosed some form of disabling heart trouble or disease. Neither the workers' compensation judge (hereafter judge) nor the Board found that Taylor does not suffer from disabling heart trouble.

The judge, in an opinion adopted by the Board, decided that Taylor had not suffered an injury arising out of and in the course of employment. He declined to apply the presumption declared in section 3212, reasoning that the presumption is limited to other Department of Forestry employees who are "active" firefighters in the sense that they pull hoses, climb ladders, rescue victims, chop through doors and roofs and engage in like activities.

## II

We granted the writ in order to consider an apparent inconsistency in the standard followed by the Board in this case and *State Employees' Retirement*

---

[1]The presumption is stated in Labor Code section 3212. As pertinent here, section 3212 provides: "[I]n the case of active firefighting members of the Department of Forestry whose duties require firefighting, . . . the term 'injury' includes pneumonia and heart trouble which develops or manifests itself during a period while such member is in the service of such office, staff, department or unit. . . .

"Such hernia, heart trouble or pneumonia so developing or manifesting itself in such cases shall be presumed to arise out of and in the course of the employment. This presumption is disputable and may be controverted by other evidence, but unless so controverted, the appeals board is bound to find in accordance with it. . . ."

*System* v. *Workmen's Comp. App. Bd.* (*McNerney*) (1968) 267 Cal.App.2d 611 [73 Cal.Rptr. 172]. McNerney worked for the Division (now Department) of Forestry as a dispatcher "with the duty of sending crews and equipment into areas where forest fires were in progress. He operated a radio and prepared fire plans. During the fire season, . . . he was on 24-hour call. During a fire he would secure men, supplies and equipment from different districts and direct them to the points of need." (*Id.*, at p. 613.) The Board held that the section 3212 presumption should apply, and the court affirmed: "The process of firefighting includes persons performing tactical and logistic functions as well as those who physically extinguish the flames. The preparation of fire plans and the dispatch of personnel and equipment are integral to the process. The statute does not confine itself to those who physically extinguish the flames; rather, it comprehends 'active firefighting members . . . whose duties require firefighting.' The notion is a transient one, progressing back from the fire line to some undetermined point in the tactical-logistic activities. McNerney's functions were such that the WCAB found him in the covered category. (Cf. *Buescher* v. *Workmen's Comp. App. Bd.*, 265 Cal.App.2d 520, 532-533 [71 Cal.Rptr. 405].) A court cannot say, as a matter of law, that this finding is without substantial support in the evidence." (*Id.*, at p. 615.)

In *Buescher* v. *Workmen's Comp. App. Bd.* (1968) 265 Cal.App.2d 520 [71 Cal.Rptr. 405], cited in *McNerney,* the court—though reaching no determination whether section 3212 was applicable—made assumptions by way of dicta consistent with the liberal interpretation reached in *McNerney* and contrary to the Board's decision herein. In *Buescher* (involving a death benefit claim by the surviving widow of an equipment maintenance foreman), the court stated: "It is . . . arguable that while working at or near the fire line decedent was exposed to most of the hazards obviously visualized by the Legislature (long tiring hours, smoke, fumes and similar hazards)" when it created the presumption. (*Id.*, at p. 532.) "Moreover, decedent was required to be present at the fires in order to maintain . . . the firefighting equipment . . . . And, in this sense at least, he was actively engaged in firefighting. In other words, it is also arguable that decedent was actively engaged in firefighting in the broad or general sense of the term." (*Ibid.*)

### III

We recite and discuss the Board's contentions seriatim.

First the Board contends that McNerney, unlike Taylor, was called upon to dispatch firemen, was on call 24 hours a day, and engaged in "tactical preparation, such as completing fire plans or apportioning equipment." Sec-

ond, the Board argues that Taylor's job is more accurately described as fire *prevention* rather than fire *fighting*. Next, relying on familiar rules of statutory interpretation and analogy to case law defining "active" law enforcement in another context, the Board contends that the statutory term "active" must be construed to limit the presumption to those engaged in "the physically active work of suppressing fires, in addition to the administrative control of those duties." Finally the Board invokes the established principle in aid of construction that the court should defer to the interpretation of a statute made by an administrative agency charged with enforcing it, unless that interpretation is clearly erroneous. (Cf. *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564].) We will conclude that none of the arguments advanced are persuasive.

First, we find no significant differences between dispatching firemen (McNerney) and cutting fire lines (Taylor) which would justify exclusion of the latter function from the scope of the statute. Indeed, under the Board's third argument Taylor presents a factually stronger case than McNerney. Likewise, the cutting of fire lines is no less "tactical" than the making of plans or deployment of equipment. Taylor, like McNerney, was on 24-hour call at fire sites.

Additionally, the semantical nuances between "fire prevention" and "fire fighting" are so elusive as to defy pragmatic distinctions. (Cf. Webster's New Internat. Dict. (3d ed. 1961) p. 855.) One who cuts fire lines to contain fires is as actively engaged in firefighting as one who extinguishes flames to prevent the fire from spreading.

The companion argument that we should limit the scope of the presumption to "the physically active work of suppressing fires, in addition to the administrative control of those duties" is similarly flawed. To the extent that the suggested definition focuses on the activity of extinguishing flames, it completely ignores the well-reasoned analysis in *McNerney* and the persuasive dicta stated in *Buescher*. Moreover, to the extent importance is placed on control of administrative duties, it injects a factor neither found decisive in *McNerney* nor relevant under the statute. And clearly the suggested limitation to physically active work in suppressing fires would include the firefighting duties performed by Taylor.

Finally, we would defer to the Board's interpretation of section 3212 only if we were satisfied that it is not clearly erroneous. In light of the precedents discussed and the strong policy underlying the rule of liberal construction in favor of injured employees, we cannot apply the requested axiom of construction.

The only troublesome fact which could meaningfully distinguish Taylor from the cases examined is the relative infrequency of occasions that Taylor was called upon to work at fire sites. Arguably, the Legislature intended that the term "active firefighting members" include only those who are commonly or frequently involved in firefighting activities. But in light of our analysis, we cannot conclude with any reasonable degree of certainty that the term "active firefighting members of the Department of Forestry whose duties require firefighting" was intended to exclude those whose job duties involve only occasional or infrequent assistance at fire sites. ■ In such circumstances, we are guided by relevant precedent: "The legislative command is that workmen's compensation laws shall be liberally construed 'with the purpose of extending their benefits for the protection of persons injured in the course of their employment.' (Lab. Code, § 3202.) Where the provisions of such laws are susceptible of an interpretation either beneficial or detrimental to injured employees or an ambiguity appears, they must be construed favorably to the employees. [Citation.] An ambiguity appears here." (*Granado* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399, 404 [71 Cal.Rptr. 678, 445 P.2d 294].) Given the analogous ambiguity herein, we likewise construe the statute in favor of Taylor's inclusion.[2]

The order is annulled and the matter remanded for further proceedings in which the presumption of section 3212 shall be applied to include claimant Taylor.

Newsom, J., and Holmdahl, J., concurred.

---

[2]Contrary to the Board's assertion at oral argument, such determination does not result in supplanting legislative intent (cf. *Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 8 [128 Cal.Rptr. 673, 547 P.2d 449]); rather, it reflects doctrinal consistency in discharging our duty to interpret provisions of the workmen's compensation act liberally in favor of the injured employee. (See *Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451].)