[No. F006063. Fifth Dist., Mar. 14, 1986.]

CALIFORNIA HIGHWAY PATROL, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD and JERALD CLARK, Respondents.

1018

**COUNSEL**

Richard A. Krimen, Michael J. Brodie, Arthur Hershenson, Fernando Da Silva and Louis Harris for Petitioner.

William B. Donohoe, Alvin R. Barrett, Charles E. Finster, Miles, Sears & Eanni and Gerald J. Maglio for Respondents.

**OPINION**

**BROWN (G. A.), P. J.**—We granted the petition in this workers' compensation proceeding to decide two issues which apparently have not been spoken to before. The first is, where it is shown the workers' compensation judge who originally rendered the decision is unavailable due to the termination of his annuitant appointment, may the Workers' Compensation Appeals Board (Board) act on a petition for reconsideration without referring the petition to the workers' compensation judge who originally rendered the decision. We will hold that the Board can act. The second is whether the language "commencing with the last date actually worked" as used in Labor Code[1] section 3212.5 refers to the same date as "termination of service" for the purpose of determining the period during which the presumption of compensability continued after a state highway patrolman discontinued his employment. We will hold that the two terms do not have the same meaning and will annul the order.

### FACTS AND PROCEDURAL HISTORY

The facts are not in dispute. Jerald Clark commenced his employment as a California Highway Patrol Officer on December 5, 1966, and retired from service on August 6, 1981. However, the last day he actually worked was March 11, 1980, nearly 17 months before his retirement.

Clark filed his petition on August 3, 1984, for workers' compensation benefits alleged to be due to a cumulative industrial injury to his heart and

---

[1] All code references are to the Labor Code unless otherwise indicated.

cardiovascular system. He alleged the condition first manifested itself on July 20, 1984. As will more clearly appear, if the extension of the section 3212.5 presumption dates from the termination of the service, Clark is entitled to the benefit of the presumption. However, if the extension dates from the last date he actually worked, he is outside the presumption.

The workers' compensation judge concluded that Clark is entitled to the benefit of the presumption. Upon petition for reconsideration by the employer, California Highway Patrol, the Board denied the petition. It appears the Board did not refer the petition for reconsideration to the judge because after the judge's decision he became unavailable due to the termination of his temporary assignment from retirement.

### DISCUSSION

 The petition for reconsideration could not be referred to the judge because he was unavailable. The Board itself in a six-page opinion fully discussed the facts of the case and reasons for its decision in compliance with section 5908.5.[2] Under these circumstances, we are of the opinion petitioner's first point is meritless.

Petitioner's reliance upon *Painter* v. *Workers' Comp. Appeals Bd.* (1985) 166 Cal.App.3d 264 [212 Cal.Rptr. 354] is misplaced. In that case the court was faced with a record which did not contain a report on reconsideration. The court held that under the facts of that case the Board, by simply incorporating the original decision of the judge, did not comply with the requirements of section 5908.5. (*Painter* v. *Workers' Comp. Appeals Bd., supra,* 166 Cal.App.3d at p. 269.) The court noted that the parties therein did not address the question of whether a judge's report on reconsideration is mandatory. In dicta, that court went on to note that such a report is clearly contemplated by rule 57(a)[3] of California Rules of Court and section 10860[4]

---

[2]Section 5908.5 provides in pertinent part as follows: "Any decision of the appeals board granting or denying a petition for reconsideration or affirming, rescinding, altering, or amending the original findings, order, decision, or award following reconsideration shall be made by the appeals board and not by a workers' compensation judge and shall be in writing, signed by a majority of the appeals board members assigned thereto, and shall state the evidence relied upon and specify in detail the reasons for the decision."

[3]California Rules of Court, rule 57(a), concerning petitions for writ of review, provides in pertinent part: "The petition shall include, as exhibits, copies of: (1) each order, decision, or award to be reviewed, and (2) the referee's findings and decision, including the referee's report and recommendation on the petition for reconsideration."

[4]Section 10860 of the Rules of Practice and Procedure of the Workers' Compensation Appeals Board provides in pertinent part as follows: "Petitions for reconsideration shall be referred to the workers' compensation judge from whose decision reconsideration is sought.

of the Rules of Practice and Procedure of the Workers' Compensation Appeals Board (Cal. Admin. Code, tit. 8, ch. 4.5, subch. 2, art. 17). (*Id.*, at pp. 268-269.) Similar dicta is found in *Aliano* v. *Workers' Comp. Appeals Bd.* (1979) 100 Cal.App.3d 341, 362 [161 Cal.Rptr. 190], and *Reich, Adell, Crost & Perry* v. *Workers' Comp. Appeals Bd.* (1979) 99 Cal.App.3d 225, 230 [160 Cal.Rptr. 218]. (See also *Mantel* v. *Workmen's Comp. Appeals Bd.* (1974) 37 Cal.App.3d 739, 753 [112 Cal.Rptr. 855].)

We agree that in the normal course of events the petition for reconsideration should be referred to the judge for a report and recommendation. However, we construe the requirements of section 10860 of the Rules of Practice and Procedure of the Workers' Compensation Appeals Board to be directory rather than mandatory, procedural rather than substantive. Accordingly, the Board can in its discretion avoid the requirements of that rule when the judge is unavailable and the Board itself independently and fully recites the facts and sets forth its reasons for its decision.

Viewing the matter from a different approach, if we assume the Board erred in not following its own procedural rule, petitioner has not shown he was prejudiced or deprived of a substantial right by the Board's failure to do so.

If we should accept the argument of petitioner, it would always be necessary to retry every case where the trial had been completed and the workers' compensation judge issued a written decision but subsequently became unavailable to prepare a report on reconsideration. Neither section 5908.5 nor *Painter* v. *Workers' Comp. Appeals Bd., supra,* 166 Cal.App.3d 264, much less common sense, compels such a requirement. It would be contrary to the express purpose and intent of the workers' compensation laws to require a written report on reconsideration by the workers' compensation judge in all cases. But rather, it is more logical to presume that the above authorities require such a report only in such a case where the workers' compensation judge himself is available to prepare such a report. "A complete system of workers' compensation includes [inter alia] . . . full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, to the end that the administration of

---

The workers' compensation judge shall prepare a report which shall contain: [¶] (a) a statement of the contentions raised by the petition; [¶] (b) a discussion of the support in the record for the findings of fact and the conclusions of law; and [¶] (c) the action recommended on the petition. [¶] The workers' compensation judge shall serve a copy of the report on the parties and any lien claimant, . . ."

such legislation *shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character;* all of which matters are expressly declared to be the social public policy of this State, . . ." (Cal. Const., art. XIV, § 4; italics added.) ██ Workers' compensation laws should be liberally construed to accomplish their purpose in aiding injured workmen. (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564]; *Flores* v. *Workmens' Comp. App. Bd.* (1974) 11 Cal.3d 171, 176 [113 Cal.Rptr. 217, 520 P.2d 1033]; *Muznik* v. *Workers' Comp. Appeals Bd.* (1975) 51 Cal.App.3d 622, 633 [124 Cal.Rptr. 407]; *Brennfleck* v. *Workmens' Comp. Appeals Bd.* (1970) 3 Cal.App.3d 666, 671 [84 Cal.Rptr. 50]; *Azevedo* v. *Industrial Acc. Com.* (1966) 243 Cal.App.2d 370, 374 [52 Cal.Rptr. 283].)

██ California Rules of Court, rule 57(a) (see fn. 3, *ante*) merely requires that the petition to the Court of Appeal contain a copy of the report and recommendation on petition for reconsideration if there is one. If there is not one, certainly the petitioner is not precluded from filing a petition for review in the appellate court stating the circumstances giving rise to the omission of the report.

██ Turning to the period during which the presumption of service-connected disability is applicable, section 3212.5 provides in pertinent part: "In the case of a member . . . of the State Highway Patrol, when any such member is employed upon a regular, full-time salary, . . . the term 'injury' as used in this division includes heart trouble and pneumonia which develops or manifests itself during a period while such member, . . . is in the service of . . . the State Highway Patrol. . . . [¶] Such heart trouble or pneumonia so developing or manifesting itself shall be presumed to arise out of and in the course of the employment; provided, however, that the member of the . . . State Highway Patrol, . . . shall have served five years or more in such capacity before the presumption shall arise as to the compensability of heart trouble so developing or manifesting itself. *This presumption is disputable and may be controverted by other evidence, but unless so controverted, the appeals board is bound to find in accordance with it. This presumption shall be extended to a member following termination of service for a period of three calendar months for each full year of the requisite service, but not to exceed 60 months in any circumstances, commencing with the last date actually worked in the specified capacity."* (Italics added.)

In deciding that the proper beginning date for calculating the period of the extension of the presumption is August 6, 1981, the date Clark retired, the workers' compensation judge interpreted section 3212.5 as follows:

"Reading the entire section does not indicate directly or by inference a distinction between employment and requisite service. Employment encompasses requisite service. Requisite service means service as an employee. An employee is in the service of the employer during the period of employment. The employment period may not be segmented so that some portion of the period would be categorized as requisite service and others as employment. To conclude otherwise would result in the anomalous situation where periods of sick leave, vacation time, regular days off or hours off duty when the employee was not performing a service for the employer would be deducted from the period covered by the presumption. [¶] In the context of the Labor Code Section the terms requisite service and actually worked are encompassed within and equate in meaning with employment for purposes of the application of Labor Code Section 3212.5."

The Board agreed.

■ When an administrative body construes a statute, we take as our guide the principle we enunciated in *People* ex. rel. *Dept. Pub. Wks.* v. *Ryan Outdoor Advertising, Inc.* (1974) 39 Cal.App.3d 804, 810 [114 Cal.Rptr. 499]: "It is, of course, true that the contemporaneous and practical construction of a statute by those whose duty it is to carry it into effect, while not conclusive, is given great respect and will be followed if not clearly erroneous. [Citations.] [¶] However, since the ultimate interpretation of the statute is an exercise in judicial power, 'it is the duty of [the] court, when such a question of law is properly presented, to state the true meaning of the statute finally and conclusively, even though this requires the overthrow of an earlier erroneous administrative construction.' [Citation.]" (See also *Wilcox* v. *Enstad* (1981) 122 Cal.App.3d 641, 653 [176 Cal.Rptr. 560]; and *People* v. *Cuevas* (1980) 111 Cal.App.3d 189, 199 [168 Cal.Rptr. 519].)

■ Ascribing identical meaning to the phrases "last date actually worked" and "termination of service" renders the former term meaningless and surplusage. It is more consistent with the rules of construction to interpret the statute so as to give effect to both the terms "last date actually worked" and "termination of service." ■ "The provisions of a statute should be construed in context and harmonized whenever possible, and rendering some words surplusage is to be avoided." (*Fig Garden Park No. 2 Assn.* v. *Local Agency Formation Com.* (1984) 162 Cal.App.3d 336, 342 [208 Cal.Rptr. 474]; *California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].)

■ We are struck by the fact that the Legislature used the two terms in the same part of the statute. On its face it would appear that if the

Legislature intended the two terms have the same meaning it would not have used different language to describe the same event. In lieu of "last date actually worked," the Legislature would simply have said "commencing with the last day of service."

■ The adverb "actually" has an unambiguous meaning. It is defined "as a matter of actual fact; really" in Webster's New World Dictionary (2d college ed. 1972) page 14. Roget's International Thesaurus (4th ed. 1977) page 1 describes as synonyms "really . . .; in reality, in actuality, . . . in point of fact, as a matter of fact; . . ."

■ The period of service and employment relationship also has a well-understood meaning in the state service. It includes the period of employment from the date of induction into service through the date of termination of the employment relationship by retirement or otherwise, including periods of sick leave, vacation time, weekends and other times when the employee is not actually performing service for the state. (See *Smith* v. *Workmen's Comp. Appeals Bd.* (1975) 45 Cal.App.3d 162 [119 Cal.Rptr. 120]; *City & County of S.F.* v. *Ind. Acc. Com.* (1956) 142 Cal.App.2d 494 [298 P.2d 651].)

■ It is clear to us that the terms "last date actually worked" and "termination of service" simply do not describe the same event. To interpret those terms as describing the same event is contrary to their plain meaning. ■ The plain meaning of a statute may be disregarded only when it would inevitably result in absurd consequences or frustrate a manifest purpose of the Legislature as a whole. (*Hooper* v. *Deukmejian* (1981) 122 Cal.App.3d 987, 1003 [176 Cal.Rptr. 569]; *Leffel* v. *Municipal Court* (1976) 54 Cal.App.3d 569, 572 [126 Cal.Rptr. 773]; *Vaughn* v. *Vaughn* (1944) 62 Cal.App.2d 260 [144 P.2d 658].) Neither result occurs here. ■ Accordingly, we construe Clark's service to include the entire period from the date of induction into the California Highway Patrol to the date of retirement and the term "last date actually worked" as the date he, in reality, actually performed service on the job.

From the foregoing we conclude that the only interpretation of the two phrases which gives effect to the different meaning of each phrase and harmonizes the two phrases without rendering either surplus is to give the employee credit for his months of service through the date of his retirement and compute the point from which this service credit extends the presumption from the last date he actually worked.

Support for this construction is found in the legislative purpose in enacting sections 3212-3212.7. The Legislature recognized "that certain stressful

occupations are presumed to be a causative factor in heart disease and that the disease thus presumptively arises from the employment." (§§ 3212 (police and firemen), 3212.2 (custodial officers), 3212.3 (state police), 3212.4 (campus firemen), 3212.5 (highway patrol), 3212.6 (law enforcement investigators), 3212.7 (other peace officers), 3213 (campus policemen).) (*Lewis* v. *Workers' Comp. Appeals Bd.* (1976) 56 Cal.App.3d 938, 952 [128 Cal.Rptr. 752].) Given this legislative recognition, it is more logical and consistent with established principles of proximate cause to presume that the Legislature extended the presumption of heart trouble (arising out of and in the course of employment) to California Highway Patrol officers even after "termination of service," provided such heart trouble manifests itself within no more than 60 months after the stressful activity has ceased (i.e., last date actually worked) calculated at a rate of three months' extension for each full year of service.

Applying this conclusion to the facts of this case, it appears the period for the application of the presumption had expired well before the date the heart condition first manifested itself, July 20, 1984. Thus the period of his employment was 14 full years—December 5, 1966 through August 6, 1981. Clark is entitled to 42 months' extension (14 times 3 equals 42). Forty-two months added to the last date he actually worked, March 11, 1980, extends the operation of the presumption to September 11, 1983, a date approximately 10 months short of July 20, 1984, the date the injury first manifested itself. Accordingly, the presumption does not apply.

The order denying reconsideration is annulled.

Woolpert, J., and Martin, J., concurred.